IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAULINE E. HILL,                                    05-CV-1171-BR

            Plaintiff,                          OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

            Defendant.


**MEGAN A. FLYNN**
Preston, Bunnell & Flynn, LLP
1500 S.W. 1st Avenue, Suite 770
Portland, OR 97201
(503) 227-5445

            Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904
(503) 727-1000


1  -   OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**FRANCO L. BECIA**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
(206) 615-2114

             Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Pauline E. Hill seeks judicial review of the

Social Security Commissioner's final decision denying her

application for Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI) under Titles II and XVI of the

Social Security Act.  This Court has jurisdiction under 42 U.S.C.

§§ 405(g) and 1383(c).

     Following a thorough review of the record, the Court **AFFIRMS**

the Commissioner's decision and **DISMISSES** this matter.


### ADMINISTRATIVE HISTORY

     Hill filed her first application for DIB in 1998.  Tr. 27-

34.[1]  An Administrative Law Judge (ALJ) held a hearing in August

2000.  Tr. 27-34.  The application was denied initially and on

reconsideration.  Hill filed a second DIB application on

--------------------------------

     [1] Citations to the official transcript of record filed with
the Commissioner's Answer on December 28, 2005, are referred to
as "Tr."

2  -   OPINION AND ORDER

September 20, 2000.  Tr. 94-96.  This application apparently was denied, but the record does not indicate whether Hill appealed this decision.

Hill filed the present applications for DIB and SSI on February 1, 2002.  Tr. 97, 824.  An ALJ held a hearing in August 2004.  At the hearing, Hill was represented by an attorney. Tr. 17, 845.  Hill; Hill's sister, Mary McMackin; and a vocational expert (VE) testified at the hearing.  Tr. 843-78.

The ALJ issued a decision on November 9, 2004, in which he found Hill was not entitled to benefits.  Tr. 17-23.  That decision became the final decision of the Commissioner on June 28, 2005, when the Appeals Council denied Hill's request for review.  Tr. 6-8.

## BACKGROUND

Born in 1952, Hill completed a GED in 1973.  Tr. 97, 110. Between 1996 and 1998 Hill worked as a candy-store clerk, bakery-delivery driver, cook, janitor, and telemarketer.  Tr. 105, 117. She also testified she worked as a caregiver.  Tr. 870.

Hill states she was first bothered by bronchitis, incontinence, arthritis, depression, anxiety, and post-traumatic stress disorder (PTSD) in "1975, 1994, 1998."  Tr. 104.  Hill contends she has been disabled and unable to work because of these impairments since January 1998.  Tr. 104.

3  -  OPINION AND ORDER

## DISABILITY ANALYSIS

The Commissioner engages in a five-step sequential process when determining disability under the Act.  20 C.F.R. § 404.1520. *See also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At Step One, the ALJ determines whether the claimant is performing substantial gainful activity.  If she is performing substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(4)(I), 416.920(b).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement.  20 C.F.R. §§ 404.1509, 404.1520(4)(ii).  If the claimant does not have a severe impairment, she is not disabled.  20 C.F.R. §§ 404.1509, 404.1520(4)(ii), 416.920(c).

At Step Three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations.  20 C.F.R. §§ 404.1520(4)(iii), 416.920(d).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  If the ALJ determines the impairment is equal to a listed impairment, the claimant is disabled.

If the ALJ proceeds beyond Step Three, he must first evaluate medical and other relevant evidence to determine the claimant's residual functional capacity (RFC).  The

claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis despite limitations imposed by her impairments.  20 C.F.R. §§ 404.1520(e), 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.

At Step Four, the claimant is not disabled if the ALJ determines the claimant retains the RFC to perform work she has done in the past.  *Yuckert*, 482 U.S. at 141-42.  *See also* 20 C.F.R. §§ 416.920(e), 404.1560(a)(3).

If the ALJ reaches Step Five, the Commissioner must determine whether the claimant is capable of performing work that exists in the national economy.  *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(e).

The initial burden of establishing disability rests on the claimant.  *Tackett*, 180 F.3d at 1098.  If the process reaches Step Five, the burden shifts to the Commissioner to show that jobs exist in the national economy that claimant is capable of performing.  *Id.*  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 404.1520(f), 416.920(f).

Hill challenges the ALJ's evaluation of the evidence and his conclusions at Step Four.

## THE ALJ'S FINDINGS

The ALJ found Hill "generally credible to the extent she does have impairments that do cause limitations, but not to the extent she is precluded from all work activities." Tr. 21. The ALJ found Hill's vocationally relevant limitations include a cervical disc bulge; arthritis; chronic obstructive pulmonary disease (COPD); hepatitis C; alcohol-induced cirrhosis; and a history of tracheal stenosis, PTSD, and depression in partial remission. Tr. 20. The ALJ assessed Hill's RFC as follows:

> The claimant has the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently. She can stand and/or walk for six hours in an eight hour workday. She can frequently climb stairs and ramps and should never climb ropes, ladders or scaffolds. She can frequently balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards. She is limited to simple, one to three step work tasks.

Tr. 22.

At Step Four, the ALJ found Hill's RFC did not preclude her from returning to her past relevant work "as she performed it." Tr. 23. Accordingly, the ALJ determined Hill was not disabled under the Act at any time through the date of his decision. Tr. 23.

## STANDARDS

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g). *See also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750. *See also Batson*, 359 F.3d at 1193.

## DISCUSSION

Hill contends the ALJ erred by inaccurately evaluating Hill's RFC because the ALJ improperly assessed Hill's credibility, improperly rejected her testimony, and improperly weighed medical and psychological evidence. Hill also contends the ALJ should have considered a previous disability determination by a state agency.

7  -  OPINION AND ORDER

## I.   Hill's Credibility

The ALJ's credibility findings must be "sufficiently
specific to permit the reviewing court to conclude that the ALJ
did not arbitrarily discredit the claimant's testimony." *Orteza
v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  When construing
credibility findings, the ALJ may consider objective medical
evidence and the claimant's treatment history as well as the
claimant's daily activities, work record, and the observations of
physicians and third-parties with personal knowledge of the
claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d
1273, 1284 (9th Cir. 1996).  In addition, the ALJ may employ
ordinary techniques of credibility evaluation such as weighing
inconsistent statements regarding symptoms by the claimant.  *Id*.
If the ALJ makes a specific and justifiable determination that
the claimant is not credible, he may reject her pain testimony.
*Magallanes*, 881 F.2d at 755.

Here the ALJ based his credibility finding on Hill's
medical-treatment record and statements that she made regarding
her daily activities and limitations.  Tr. 20.

Hill has a documented history of COPD, alcohol-induced
cirrhosis, cervical disc disease, alcoholism, and depression.
Tr. 394, 403, 515, 653, 697, 705.  The ALJ found Hill generally
credible regarding the existence of her impairments.  Tr. 21.
The ALJ, however, noted Hill did not cooperate in evaluative

8  -   OPINION AND ORDER

examinations.  Tr. 19, 21.  The record reflects "significant
functional limitation"[2] and "very poor effort" in upper
extremity, spinal, and cervical range of motion testing.  Tr.
389-90, 397. Self-limiting behavior during examinations is an
adequate reason for the ALJ to question a claimant's credibility.
See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).  The
record reflects Hill's examination results were normal when she
did not offer self-limiting behavior.  Tr. 21, 390, 397.

The ALJ also noted Hill's statements were inconsistent.  For
example, even though Hill frequently denied drinking alcohol, the
ALJ pointed out that Hill presented to clinical appointments
smelling of alcohol on at least six occasions between April 1999
and April 2003.  Tr. 19, 496, 503, 513, 521, 595, 697-98, 805.
The ALJ may rely on such inconsistencies when determining a
claimant's credibility.  Smolen, 80 F.3d at 1284.

Based on this record, the Court finds the ALJ did not err
when he found Hill not credible in light of her presentation and
medical record because the ALJ provided legally sufficient
reasons supported by the record for doing so.  See Batson, 359
F.3d at 1193.

---

[2] "Functional overlay" indicates the emotional aspect of an
organic disease.  It may occur as an overreaction to an illness
and is characterized by symptoms that continue long after
clinical signs of the disease have ended.  Mosby's Medical,
Nursing, and Allied Health Dictionary (5th ed. 1998).

II.  **The ALJ's Evaluation of Medical Source Statements and Medical Evidence**

Although the record reflects Hill's medical history beginning in 1996 and continuing through June 2004, Hill's present claim concerns only the period beginning August 19, 2000.

   **a.  Chris Murphy, M.D.:  Hill's Physical Impairments**

Dr. Murphy, one of Hill's treating physicians, treated Hill between August 2000 and December 2002.  Tr. 488-554. Dr. Murphy's treatment notes indicate diagnoses of COPD, cervical arthritis, undetermined bilateral hand and wrist pain, and alcoholism.  Tr. 488-554.

Generally the ALJ must give greater weight to the opinion of a treating physician than to the opinion of an examining or consultative physician.  *Edlund*, 253 F.3d at 1157.  The ALJ, however, is not required to accept every aspect of a physician's opinion.  *Howard v. Barnhart,* 341 F.3d 1006, 1012-13 (9th Cir. 2003).  If the ALJ accords examining or consulting medical sources greater weight than a treating physician, the ALJ must give "specific and legitimate" reasons for doing so.  *Edlund*, 253 F.3d at 1157.

Dr. Murphy completed two "physical residual functional

capacity" forms provided by DDS[3]:  the first is undated, and the
second is dated December 2, 2002.  Tr. 485-88.  The primary
difference between the two reports is that the undated form
reflects Hill could stand at least two hours per day and sit less
than six hours per day, and the December 2, 2002, form reflects
Hill could stand less than two hours per day but was not limited
in sitting as long as she had an opportunity to alternate sitting
and standing.  Tr. 485, 487.  The Court finds the difference
between the information on the forms is insignificant as to the
ALJ's ultimate opinion on the issue of Hill's disability.

On both forms, Dr. Murphy indicates Hill could lift ten
pounds only occasionally and could not lift any weight
frequently.  Tr. 485, 487.  Dr. Murphy also found Hill was
limited in pushing and pulling with her upper extremities.
Tr. 485, 487.  Dr. Murphy reported Hill has no postural
limitations, but she "frequently" is limited in climbing,
balancing, stooping, kneeling, crouching, and crawling.  Tr. 486,
488.  Dr. Murphy found Hill only "occasionally" limited in
reaching and frequently limited in handling and fingering.
Tr. 486, 488.  Dr. Murphy also reported Hill should avoid
all exposure to temperature extremes and avoid frequent exposure

---

[3] DDS is a federally-funded state agency that makes
eligibility determinations on behalf and under the supervision of
the Social Security Administration pursuant to 42 U.S.C. § 421(a)
and 20 C.F.R. §§ 404.1503, 416.903.

11 -    OPINION AND ORDER

to wetness, humidity, noise, and vibration.  Tr. 486, 488.  He
based his conclusion on diagnoses of COPD, cervical disc disease,
hepatitis C, anxiety, and depression.  Tr. 486, 488.  Dr. Murphy
concluded Hill's condition was stable and found her generally
compliant with treatment except when she abused alcohol.
Tr. 486, 488.  Dr. Murphy also opined Hill's "physical and
psychoactive complaints are very closely tied."  Tr. 488.

    The ALJ gave little weight to Dr. Murphy's opinion because
he concluded Dr. Murphy

> based his assessment completely on the
> claimant's subjective complaints as his
> assessment is not supported by the other
> medical records, the other physicians'
> opinions or even by his own records.
> Dr. Murphy's records simply noted the
> claimant's numerous pain and symptom
> complaints with no clear etiology being
> determined.

Tr. 19.  Dr. Murphy's chart notes, however, recorded clinical
observations distinct from subjective reports, including
laboratory results and imaging studies documenting Hill's
COPD, cervical disc disease, and liver dysfunction.  Tr. 496,
499, 508, 515-16, 519, 525, 533, 553-54, 556, 666-77, 681.
Dr. Murphy's notes also reflect Hill's limitations in lifting,
pushing, pulling, and handling objects, and the ALJ's assessment
of Hill's RFC includes these allowances and restrictions.
Tr. 22.  Dr. Murphy's notes, however, do not support limitations
in Hill's ability to balance, stoop, crouch and crawl, and,

therefore, the ALJ properly did not include those limitations
when assessing Hill's RFC.  Tr. 22, 488-554.

As one of Hill's treating physicians, Dr. Murphy's opinion
is entitled to controlling weight if it is supported by medical
evidence such as clinical notes.  *See id.*  Here, however, when
the ALJ assessed Hill's RFC, he relied on the opinions of
Drs. Dejan Dordevich, M.D., and Arin Braseth, M.D., Hill's
examining physicians, rather than the opinion of Dr. Murphy.
Tr. 19.  Hill, therefore, contends the ALJ erred when he rejected
Dr. Murphy's opinion as to Hill's limitations and instead relied
on the reports of Drs. Dordevich and Braseth.  Tr. 19.  The
Court, however, finds the ALJ's error is harmless in light of the
fact that the opinions of Drs. Dordevich and Braseth do not
contradict Dr. Murphy's clinical observations.  Tr. 390, 397.

Both Drs. Dordevich and Braseth reported Hill's asthma,
COPD, and Hepatitis C.  Tr. 390, 397.  Both physicians also
confirmed Hill's cervical disk disease in clinical examinations
and noted the strong functional or psychosomatic overlay that
Dr. Murphy reported in his opinion.  Tr. 390, 397.  Dr. Dordevich
also noted Hill's wrist showed full range of motion.  Tr. 390.
Dr. Murphy's opinion did not contradict this conclusion in his
reports.  Tr. 530, 533.  Dr. Braseth opined Hill's wrist
impairment was due to tendinitis while Dr. Murphy considered the
etiology of Hill's wrist pain unclear.  Tr. 398, 498, 504, 508,

518, 549.

Thus, based on this record, the Court finds the differences between the findings of Drs. Dordevich, Braseth, and Murphy are effectively insignificant.

Although the ALJ should have included Dr. Murphy's December 2, 2002, report when he formulated Hill's RFC, the ALJ did not omit from his RFC assessment any significant limitations substantiated by medical evidence in the record.  As noted, Dr. Murphy's report of additional limitations in Hill's ability to balance, stoop, kneel, crouch, and crawl are not supported by his notes.  Because the substantiated elements of Dr. Murphy's opinion also were reported by Drs. Dordevich and Braseth and the ALJ relied on the reports of Drs. Dordevich and Braseth, the little weight given to Dr. Murphy's opinion by the ALJ was harmless.  This Court will not remand for harmless error.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**b.  Mental Impairments**

**(1) James Powell, Psy.D., Examining Psychologist**

Hill contends the ALJ failed to evaluate properly the report submitted by Dr. Powell, an examining psychologist.  DDS referred Hill to Dr. Powell for a psychological assessment. Dr. Powell found Hill had major depressive disorder in partial remission, PTSD, and a history suggesting borderline personality disorder.  Tr. 293.  Although the ALJ noted these findings in

14 -   OPINION AND ORDER

his opinion, he misconstrued Dr. Powell's report when he found it was based entirely on Hill's subjective complaints.  Tr. 18. Dr. Powell, in fact, conducted a clinical examination, an interview, and neuropsychological tests.  Tr. 286-96.  His examination included a personality test[4] in which Hill endorsed numerous negative complaints, which made the test result statistically invalid.  Tr. 293.  Contrary to the ALJ's conclusion, however, Dr. Powell specifically noted invalid personality test results did not invalidate his entire report. Dr. Powell stated the invalid test results do "not imply that Ms. Hill is not experiencing psychological or emotional distress." Tr. 18, 293.  In addition, Dr. Powell did not suggest his clinical examination and tests measuring verbal abilities, processing speed, and memory are controverted by such personality test results.  Tr. 293-96.

Dr. Powell also did not suggest Hill's mental status precluded her from working in the foreseeable future.  In fact, Dr. Powell reported there is "no clear, overt evidence that Ms. Hill has not been able to maintain employment in the past primarily due to psychologically-based features."  Dr. Powell also opined, "It may well take a period of twelve months for this client to complete a program of rehabilitation to the point that

---

[4] Dr. Powell used the Minnesota Multiphasic Personality Inventory-2 (MMPI-2).  Tr. 293.

she is able to maintain employment." Dr. Powell, however, did not explicitly endorse a twelve-month period of disability due to his diagnoses. Tr. 295. Dr. Powell concluded his assessment as follows: "It is also this examiner's opinion that [Hill] could take more active steps in pursuing future employment, such as being involved in some type of vocational rehabilitation program. The prognosis for her being able to maintain employment in the future is considered to be good at this time." Tr. 295. Thus, the record does not support Hill's contention that Dr. Powell concludes Hill is totally disabled.

The ALJ assigned Dr. Powell's opinion "little weight" and indicated his report was internally contradictory because of the invalid personality test result. Tr. 18. As noted, however, Powell's report cannot be dismissed because it noted an invalid test score. Dr. Powell's report, however, does not support Hill's alleged disability.

The Court, therefore, finds the ALJ erred when he did not provide sufficiently clear and convincing reasons for rejecting Dr. Powell's uncontradicted report. Again, however, the ALJ's error is harmless because Dr. Powell's opinion does not support Hill's claim that she is disabled. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). *See also Burch*, 400 F.3d at 679.

16 -   OPINION AND ORDER

**(2) Somataform Disorder**

Hill also asserts her alleged somataform disorder requires a presumptive finding of disability.  The record, however, does not contain any medical evidence to support a diagnosis of somataform disorder much less total disability.  Tr. 293, 383.  Hill's treating and examining physicians, including Drs. Murphy and Powell, indicated Hill's pain and limitations have "a strong functional component" or somatic features.  Tr. 293, 389, 390, 488.  The record, however, does not reflect any established somatic diagnosis.

Jane Starbird, Ph.D., an evaluating psychologist, reported Hill has a pain disorder, but Dr. Starbird did not identify a somatoform disorder or impairment that meets the criteria of a listed impairment.  Tr. 383.  Thus, contrary to Hill's contention, she has not been evaluated as meeting Listing 12.07 and her disability cannot be established without medical evidence to support that disability.  *See* 20 C.F.R. §§ 404.1504, 416.914.

**c.  Mental and Physical Impairments in Combination**

An ALJ is required to consider all medically sustainable impairments in combination.  20 C.F.R. §§ 404.1523, 416.923.  *See also Lester*, 81 F.3d at 830.  Hill contends the ALJ erred by failing to consider her mental and physical impairments in combination when evaluating her RFC.

17 -   OPINION AND ORDER

The ALJ's RFC assessment included Hill's physical and mental limitations.  The ALJ noted Hill's COPD when he concluded she required accommodation by limited exposure to "fumes, odors, dusts, gases, poor ventilation and hazards."  Tr. 22.  When the ALJ found Hill was only able to perform "simple one, two, three step work," the ALJ based his finding on Hill's concentration difficulties stemming from her depression.  Tr. 22.  Hill's only other documented mental impairment is apparent slow speed in completing testing.  Tr. 292-93, 385, 387.  That impairment, however, does not appear to preclude simple one, two, three step work in her case.  The ALJ was not required to include any additional unsubstantiated claims in his RFC assessment.  *See Osenbeck v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The Court, therefore, finds the ALJ did not fail to consider Hill's mental and physical impairments in combination.

In summary, the Court finds the ALJ's errors as to his analysis of Hill's physical and mental impairments are harmless and that the ALJ properly considered Hill's mental and physical impairments in combination.

## III. State-Agency Disability Determinations

Hill contends a determination by the Oregon Department of Human Services (DHS) in April 2002 to provide cash and medical

assistance to Hill supports her present claim for disability.
Hill asserts DHS's decision establishes Hill met the listed
criteria for General Assistance benefits[5] under Oregon law.
Tr. 239.

Hill argues the ALJ is required to give "great weight" to
the DHS disability determination.  The Ninth Circuit, however,
rejected this argument in *Bunnell v. Sullivan*, 912 F.2d 1149,
1155 (9th Cir. 1990), *rev'd en banc on other grounds by Wilson v.
Heckler*, 761 F.2d 1383 (9th Cir. 1985).  In *Bunnell*, the claimant
argued the Secretary must afford great weight to state-agency
decisions and provide specific and legitimate reasons for
disregarding the state-agency's determination.  The Ninth Circuit
found this argument "curious":

> We see no reason to construct another hoop
> through which the Secretary must jump.  The
> Secretary's regulation means what it says:
> the determination of a state agency 'is not
> binding.' As we held in *Wilson*, '[t]he state
> finding may be introduced into evidence
> before the Secretary, but she may attribute
> as much or as little weight to it as she
> deems appropriate.'  761 F.2d at 1385.  We
> hold the secretary is not required to

---

[5] The General Assistance (GA) program is a state-funded
program that provides cash and medical assistance to people with
physical or mental disabilities who have applied for Supplemental
Security Income.  Or. Dep't of Health and Human Serv.,
http://www.oregon.gove/DHS/spwpd/foodfin.shtml (last visited
July 7, 2006).

articulate specific reasons for disregarding
the state agency determination.

*Bunnell*, 912 F.2d at 1155.  The court did not overturn this
conclusion in its *en banc* reconsideration of *Bunnell*.  *See*
*Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  Thus, the ALJ
is not bound by the disability decisions made by a state agency,
may attribute "as much or as little weight to it" as he deems
appropriate, and "is not required to articulate specific reasons
for disregarding the state agency determination."

Accordingly, the Court concludes the ALJ did not err when he
disregarded the DHS's decision.

## IV.  The ALJ's Step-Four Evaluation

Hill contends the ALJ erred when he found Hill could return
to her past relevant work as a telemarketer or caregiver "as she
performed these jobs."  Tr. 22, 871.

The ALJ must include all limitations supported by
substantial evidence in his hypothetical question to the VE, but
he may exclude unsupported limitations and disregard VE testimony
based on unsupported restrictions.  *Bayliss v. Barnhart*, 427 F.3d
1211, 1217 (9th Cir. 2005).  *See also Osenbrock*, 240 F.3d at
1163-65.  Here the ALJ's questions to the VE accurately included
all of the limitations identified in Hill's RFC assessment.  The

ALJ did not find Hill's additional self-reported limitations, such as an inability to leave her house for two days per month, supported by the medical evidence. *Id.* Thus, the ALJ did not err when he excluded those self-reported limitations.

In response to the ALJ's hypothetical, the VE testified Hill's prior work as a telemarketer would accommodate her documented limitations stemming from her COPD because, among other things, the environment would be clean. Tr. 875. The VE also testified Hill could perform her past work as a caregiver because it was light work as she performed it and did not include any lifting. Tr. 870-71, 873.

On this record, the Court finds the ALJ did not err in his hypothetical questions to the VE nor did he err when he concluded, based on the VE's testimony, that Hill could return to her previous work as a caregiver or a telemarketer "as she performed that work."

In summary, the Court finds the Commissioner's decision that Hill is not disabled and, therefore, is not entitled to benefits under Titles II and XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's

decision and **DISMISSES** this case.

IT IS SO ORDERED.

DATED this 21st day of July, 2006.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge